IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Brandon Haskell, as the Personal Representative of the Estate of Antwan Haskell, by and through his assignee, Dante Pelzer, as the Personal Representative of the Estate of Jai' Von Pelzer,<br><br>           Plaintiff,<br><br>v.<br><br>EAN Holdings, LLC and Enterprise Leasing Company—Southeast, LLC,<br><br>           Defendants. | C.A. No. 2:22-2918-RMG<br><br>**ORDER** |

      This matter comes before the Court on Defendants' motion for summary judgment (Dkt. No. 154) and Plaintiff's motion for partial summary judgment. (Dkt. No. 153). The motions have been fully briefed and are ripe for disposition. For reasons set forth below, the Court grants Defendants' motion for summary judgment and denies Plaintiff's motion for partial summary judgment.

**Legal Standard**

      To prevail on a motion for summary judgment, the movant must demonstrate that there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The party seeking summary judgment has the burden of identifying the portions of the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, [which] show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgement as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317,

1

322-23 & n.4 (1986) (citing Rule 56(c)). The Court will interpret all inferences and ambiguities against the movant and in favor of the non-moving party. *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). Where the moving party has met its burden to put forth sufficient evidence to demonstrate there is no genuine dispute of material fact, the non-moving party must come forth with "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citing Rule 56(e)). An issue of material fact is genuine if the evidence is such that a reasonable jury could return a verdict in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986).

## Factual Background

On February 23, 2018, Antwan Haskell ("Haskell") rented a vehicle from Defendant Enterprise Leasing Company—Southeast, LLC ("Enterprise") with an anticipated return date of February 26, 2018. (Dkt. No. 154-6). Haskell carried no personal automobile liability insurance coverage and declined Enterprise's offer of insurance coverage when he rented the vehicle. (*Id.*) The vehicle rented by Haskell was owned by Defendant EAN Holdings, LLC ("EAN"), which self-insured the vehicle.[1] Enterprise and EAN are corporate affiliates. (Dkt. No. 35, ¶ 10).

Haskell's rental car contract with Enterprise expressly stated that it did not extend liability coverage to its renters "[e]xcept to the extent required by the motor vehicle responsibility laws" of the state and that its obligations to the renter were "limited to the applicable state minimum

---

[1] EAN held a Self Insured Certificate issued by the South Carolina Department of Motor Vehicles. (Dkt. No. 154-4).

financial responsibility amounts." (Dkt. No. 154-7 at ¶ 8).[2] South Carolina law provides minimal liability coverage of $25,000 for bodily injury for one person, $50,000 for bodily injury to two or more persons, and $25,000 for property damage. S.C. Code Ann. § 38-77-140.  Self-insured car rental companies are required in South Carolina to provide the minimum liability limits set forth in § 38-77-140 for their rental cars, in furtherance of the "overall purpose" of the statute "to assure protection for the public for injuries and damages growing out of the negligent operation of motor vehicles on the roads" of South Carolina. *Southern Home Ins. Co. v. Burdette's Leasing Service, Inc.*, 234 S.E.2d 870, 872 (S.C. 1977).

In the early morning hours of February 24, 2018, Haskell was involved in a violent collision in North Charleston, South Carolina, which resulted in the deaths at the scene of the three occupants in the struck vehicle, Shanecquia Brooks, Jasmine Brooks, and Jai'von Pelzer.  Haskell also died as a result of injuries from the collision.  Haskell was under investigation for felony driving under the influence at the time he died at a local hospital, and there is uncontested record evidence that Haskell was traveling in excess of 100 miles per hour when he struck the vehicle occupied by the Brooks and Pelzer. (Dkt. Nos. 154-8; 154-9; 154-21 at 37:5-10).

---

[2]  The rental agreement between Antwan Haskell and Enterprise provided as follows:

> Except to the extent required by the motor vehicle financial responsibility laws of the applicable state or otherwise by law or this Agreement, neither [Enterprise] or its affiliate extends any of the motor vehicle financial responsibility or provides insurance coverage to Renter. . . . However, if Renter . . . [is] in compliance with the terms and conditions of this Agreement, and if Owner or affiliate is obligated to extend its motor vehicle financial responsibility to Renter . . ., then Owner's or affiliate's obligation is limited to the applicable state minimum financial responsibility amounts.

(Dkt. No. 154-7, ¶ 8.)

Personal representatives were subsequently appointed to represent the estates of the three victims of the Haskell collision. Antonia Brooks, the mother of Shanecquia and Jasmine Brooks, was appointed the personal representative of her daughters' estates. Dante Pelzer was appointed personal representative of the estate of Jai'von Pelzer. Defendants subsequently paid the entire amount of the minimum financial responsibility limits of $75,000 to the two Brooks estates. (Dkt. No. 154-67).³

The Pelzer Estate brought a wrongful death action against the Haskell Estate on November 1, 2019. (Dkt. No. 154-73). Defendants declined to provide a defense, stating that "we have no duty to defend our renters" and that all available minimum financial limits had been exhausted. (Dkt. No. 154-75). The Haskell Estate went into default and no one appeared on behalf of the Haskell Estate at the damages hearing in state court. The state court awarded the Pelzer Estate $5,000,000 on March 25, 2021. (Dkt. No. 154-14). At some point, Brandon Haskell, personal representative of the Estate of Antwan Haskell, is purported to have signed an assignment of all rights under its contract with the car rental company to Dante Pelzer, as personal representative

---

³ Counsel for the Pelzer Estate was fully informed of the proposed payment of the full amount of available minimum financial responsibility limits of $75,000 to the Brooks Estates and elected to raise no objection to the settlement. (Dkt. Nos. 154-65 at 2; 154-66 at 2). He explained in a deposition that the proposed settlement paid two thirds of the $75,000 in available funds to the Estate of Shanecquia Brooks, which produced the same result as a three way split of the available limits since the sole beneficiary of the Estates of Shanecquia Brooks and Pelzer were the decedents' minor child. (Dkt. No. 154-45 at 8). After counsel for the Pelzer Estate agreed not to object to the Brooks Estates settlement, the uncontested record evidence establishes that counsel for the Brooks Estates paid one half of the fee earned from the Brooks settlement to counsel for the Pelzer Estate, despite the fact that counsel for the Pelzer Estate did not represent the Brooks Estate and the sharing of the fee with counsel for the Pelzer Estate was not authorized by the state court order approving the distribution of settlement proceeds from the Brooks Estates settlement with Defendants. (Dkt. Nos. 154-65; 154-67 at 3; 181-2; 181-3).

of the Estate of Jai'Von Pelzer.[4]

This suit, brought by Dante Pelzer on behalf of the Estate of Jai'Von Pelzer on assignment from Brandon Haskell on behalf of the Estate of Antwan Haskell, was originally filed in the Charleston County Court of Common Pleas on July 15, 2022 and was subsequently removed by Defendants to federal court thereafter. (Dkt. No. 1-1). Defendants thereafter moved to dismiss the Complaint on a variety of grounds. The Court granted the Defendants' motion to dismiss as to Plaintiff's claims for negligence and Unfair Trade Practices but denied it as to the breach of contract and bad faith claims. The Court noted in particular the parties' vigorous dispute regarding the impact of *Fecteau v. EAN Holdings, LLC*, No. 2:18-cv-3060-DCN, 2019 WL 2448563 (D.S.C. June 12, 2019) and stated that "[s]ummary judgment is a more appropriate disposition of that issue." (Dkt. No. 33 at 8). With the benefit of an extensive record, the Court now addresses the parties' summary judgment motions.

**Discussion**

A.  Bad Faith Claim

Defendants have moved for summary judgment on Plaintiff's bad faith claim, arguing that a self-insured rental car company is not an insurance company and is not subject to a bad faith claim that can be brought only against an insurance company for breach of its insurance contract

---

[4] Defendants contest the validity of the assignment, asserting that the personal representative of the Haskell Estate, Brandon Haskell, testified he did not recall signing the assignment and was unable to confirm that the signature on the assignment was actually his. (Dkt. No. 154-21 at 63:15-64:20). The Court also notes that it was supplied two versions of the assignment. One version of the assignment, which is undated but references an undesignated day in December 2021, is signed only by Brandon Haskell. This version was filed with the Court on September 28, 2022 by Defendants. (Dkt. No. 8-7). Another version, filed by Plaintiff, carries the signatures of Brandon Haskell and Dante Pelzer and was allegedly witnessed by a notary on November 21, 2022. (Dkt. No. 26-1). In light of the Court's grant of summary judgment on the bad faith and breach of contract claims, the Court finds it unnecessary to reach the issue of the validity of the assignment.

with an insured. Defendants further assert that they have no obligation under their car rental contract or by operation of state law to provide a defense to a renter if sued for improper operation of one of its rental cars or to provide its renter anything beyond the payment of minimum financial limits under state law. (Dkt. No. 154-1 at 4-13; Dkt. No. 167 at 3-9). On the other hand, Plaintiff argues that a rental car agreement "is a contract that gives rise to the same rights and duties as an insurance policy." (Dkt. No. 175 at 11-21).

It is important at the outset to recognize the distinctive nature of a bad faith claim that can be asserted against an insurance company under South Carolina law. A cause of action for bad faith against an insurance company requires four essential elements: (1) the existence of a mutually binding contract of insurance between the parties; (2) a refusal by the insurer to pay benefits due under the insurance contract; (3) the insurer acted in bad faith or unreasonably in failing to settle within policy limits, in breach of an implied covenant of good faith and fair dealing arising under the contract; and (4) the insurer's conduct caused damage to the insured. *Snyder v. State Farm Mut. Auto. Ins. Co.*, 586 F. Supp. 2d 453, 457 (D.S.C. 2008); *Howard v. State Farm Mut. Auto Ins. Co.*, 450 S.E.2d 582, 586 (S.C. 1994). No such cause of action exists in an ordinary breach of contract case as this is an extraordinary remedy that recognizes the special duties an insurance company has toward its insureds. An insurance company further has a duty to defend its insured in any case in which the claim has any possibility of coverage under the insurance policy. *City of Hartsville v. South Carolina Mun. Ins. & Risk Financing Fund*, 677 S.E. 2d 574, 580 (S.C. 2009).

South Carolina law further provides that a self-insured car rental company must provide minimum liability limits coverage for any rental vehicle if the driver is otherwise uninsured. *Southern Home Ins. Co. v. Burdette's Leasing Service*, 234 S.E. 2d 870 (S.C. 1977). This obligation imposed on self-insured car rental companies is in recognition of the state's mandatory minimum

limits requirements for all motor vehicles "to assure protection for the public for injuries and damages growing out of the negligent operation of motor vehicles on the roads of this State." *Id*. at 872. The South Carolina Supreme Court specifically noted in *Southern Home* that this obligation to provide minimum liability limits did not transform a self-insured car rental company into an insurer. "Technically, a self-insurer is not an insurer at all. In actuality, a self-insurer provides a substitute for an insurance policy." *Id.*

The issue of whether a self-insured car rental company is subject to a bad faith claim was presented to this court in *Fecteau v. EAN Holdings,* which involved the very same defendants present here. In a decision by United States District Judge David Norton, the court noted that a bad faith claim under South Carolina law requires "the existence of a contract of insurance between the parties," and while the obligation of a self-insured car rental company to provide minimum liability limits to uninsured renters "substitutes for an insurance policy," it does not create an insurance contract. *Id*. at *2. Consequently, since there is no insurance contract between an uninsured car renter and a self-insured car rental company, *Facteau* held there is no "basis in South Carolina law . . . to pursue a bad faith claim" against a self-insured car rental company. *Id.* at *3.

In *Clayborne v. Enterprise Leasing Company of St. Louis, LLC*, 524 S.W.3d 101 (Mo. App. 2017), the customer rented a vehicle from defendant, another Enterprise affiliate and, like Antwan Haskell, declined to purchase insurance coverage made available by Enterprise. The bad faith claim asserted against the defendant was based on its alleged breach of its duty to defend the renter and to settle the claim. The Enterprise defendant paid the minimum liability limits required under state law but declined to provide the customer a defense in a liability suit brought against him by an injured driver. The Missouri Court of Appeals rejected the customer's bad faith claim:

> Enterprise is a self-insured car rental company and not an insurance

7

> company. Under the MVFRL[5], Enterprise, as a self-insured entity, only had the duty to pay third parties injured by the renters of its vehicles, and had no separate and independent duty to provide Appellant as a renter with a defense or settle claims . . . . Neither Enterprise nor ELCO[6] had a contractual duty under the rental agreement or a statutory duty under the MVFRL to defend Appellant . . . .

*Id*. at 107. The Court in *Clayborne* rejected the plaintiff's bad faith claim because it lacked "two fundamental prerequisites to a bad faith claim—the identity of the party (an insurer) and the type of agreement (liability policy)." *Id*. at 108.

The Hawaii Supreme Court in *Simmons v. Puu*, 94 P.3d 667 (Haw. 2004) addressed a suit where a third-party claimant sought to assert a bad faith claim against the at-fault driver's self-insured car rental company, Hertz, without the benefit of an assignment from the at-fault driver. In the course of rejecting the bad faith claim, the *Simmons* court held that a bad faith claim arises out of a contractual relationship between an insurer and an insured and "self-insurers are not insurers, inasmuch as they are 'not in the business of making contracts of motor vehicle insurance' . . . . By its plain language, Hertz's self-insurer agreement is not an insurance contract." *Id*. at 127.

In *Hawkins v. Ford Motor Company*, 566 S.E.2d 624 (W. Va. 2002), the West Virginia Supreme Court addressed the issue of whether a self-insured car manufacturer could be sued for bad faith. The Court upheld a lower court finding that a bad faith claim applied "only to persons or entities engaged in the business of insurance" and that a self-insured car manufacturer was "not in the business of insurance." *Id*. at 629.

---

[5] MVFRL stands for Missouri Motor Vehicle Financial Responsibility Law and is analogous to the South Carolina minimum financial responsibility law required for all motor vehicles operated on the roads of South Carolina.

[6] ELCO stands for ELCO Administrative Services Company and is a corporate affiliate of Defendants. ELCO conducted the adjusting services for Defendants in this action.

Plaintiff argues that a self-insured car rental company's duty to provide minimal financial limits to persons injured by its renters imposed by state law converts the car rental contract into a contract of insurance co-extensive with that offered by a licensed insurance carrier. The great weight of authority, within South Carolina and elsewhere, is that a self-insured car rental company's obligation begins and ends with the duty to provide persons injured due to the negligence of its renters in the operation of a rental car payment up to the state's minimum financial responsibility limits and does not carry the additional obligations imposed on an insurance company to provide a defense to its insured and to negotiate settlements that protect the renter from excess liability beyond the minimum limits. *Fecteau*, 2019 WL 2448563, at *2-3; *Clayborne*, 524 S.W. 2d at 107-08; *Simmons*, 94 P.3d at 682.

In the case before the Court, Antwan Haskell, an uninsured operator of a rental car who declined an offer to purchase liability insurance made available by Defendants, seeks, through his estate, to impose on the self-insured rental car company the benefits enjoyed by insureds who purchase an insurance contract, something he declined to do. Enterprise's rental car contract with Antwan Haskell expressly provided that Enterprise and its affiliates' obligations were "limited to the applicable state minimum financial responsibility amounts" and that the rental contract did not extend "insurance coverage to renter." (Dkt. No. 154-7, ¶ 8). The self-insured car rental company defendants in this action are not insurance companies, they do not carry the obligations of an insurance company to provide a defense to their renters, and they are not subject to a bad faith claim under South Carolina law that is limited to actions between insureds who purchased a contract of insurance from an insurance company. To rule otherwise would go against well-reasoned judicial precedent and provide an uninsured driver who elected not to purchase insurance coverage at the time he rented the Enterprise vehicle all of the benefits of an insured who had paid

his premium and was issued an insurance contract by an insurance company. This would convert the requirement that self-insured rental car companies provide minimum financial limits to protect innocent third parties injured by a renter's negligent operation of a rental car into a protection for uninsured renters who elect to drive without any liability coverage. After carefully weighing all record evidence in a light most favorable to the non-moving party, the Court finds that there is no genuine issue as to any material fact and that Defendants are entitled to a judgment as a matter of law on Plaintiff's bad faith claim. Consequently, the Court grants Defendants' motion for summary judgment regarding Plaintiff's bad faith claims (Dkt. No. 154).[7]

      B.      Breach of Contract Claim

Plaintiff's breach of contract claim closely tracks his bad faith claim, alleging that Enterprise Defendants had a duty to defend, communicate with its renter as if he was an insured under an insurance contract, and perform all other duties that "a statutory liability insurance policy would provide." (Dkt. No. 26, ¶¶ 101-15). The Enterprise rental car contract plainly does not impose such obligations, and in fact expressly disclaims any duties to the renter beyond payment of minimum policy limits mandated by state law. (Dkt. No. 154-7, ¶ 8). Further, South Carolina case law firmly establishes that a "self-insurer is not an insurer at all" and a rental car contract issued by a self-insured rental car company does not create an insurance contract. *Fecteau*, 2019 WL 2448563, at *2; *Southern Home Ins. Co.*, 234 S.E.2d at 477. In sum, the fact that Defendants, as self-insured car rental companies, did not provide a defense to the Haskell Estate in the Pelzer Estate wrongful death action or provide the other benefits enjoyed by insureds under an insurance

---

[7] Plaintiff moved for partial summary judgment on the basis that "under South Carolina law, Defendants, as self-insurers, should be subject to the same tort liability for breach of the duty of good faith and fair dealing as insurers would be under same circumstances." (Dkt. No. 153-1 at 17). Based upon the reasoning set forth in addressing Defendants' motion for summary judgment on the bad faith claim, Plaintiff's motion for partial summary judgment is denied.

contract does not give rise to a breach of contract claim under the rental contract entered between Antwan Haskell and the Enterprise Defendants. After carefully weighing all record evidence in a light most favorable to the non-moving party, the Court finds that there is no genuine issue as to any material fact and Defendants are entitled to summary judgment on Plaintiff's breach of contract claim. Consequently, the Court grants summary judgment to Defendants on Plaintiff's breach of contract claim.

    C.    <u>Defendants' Argument that Collusion Voids the Assignment of Claims Between the Haskell and Pelzer Estates</u>

Defendants have submitted voluminous documentary evidence to support their claims that the assignment of claims to the Pelzer Estate by the Haskell Estate was the product of deceptive and collusive conduct that should void the assignment. (Dkt. No. 154-1 at 21-24). In light of the grant of summary judgment on the bad faith and breach of contract claims set forth above, the Court finds it unnecessary to reach this issue.

### Conclusion

For reasons set forth above, the Court grants Defendants' motion for summary judgment (Dkt. No. 154) and denies Plaintiff's motion for partial summary judgment. (Dkt. No. 153). This action is dismissed with prejudice.

**AND IT IS SO ORDERED**.

<u>s/ Richard Mark Gergel</u>
Richard Mark Gergel
United States District Judge

July 9, 2024
Charleston, South Carolina

11